UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUSTIN LEFEVRE,

    Plaintiff,

v.                                              CASE NO. 8:15-cv-1428-T-23TBM

LA COTE BASQUE WINEHOUSE,
INC., et al.,

    Defendants.
_____/

**ORDER**

Under both the Fair Labor Standards Act (Count I) and under Florida law (Counts II and III), Justin LeFevre, formerly a server for La Cote Basque Winehouse, Inc., sues (Doc. 12) La Cote and three persons who "managed, owned and/or operated La Cote." The defendants move (Doc. 14) to dismiss the complaint.[1]

**1. Count I**

Count I claims a violation of Section 207(a)(1) of the FLSA, which mandates compensation "for a workweek longer than forty hours" "at a rate not less than one

---

[1] The motion is entitled "Defendants' motion to dismiss amended complaint or alternative motion for summary judgment." (Doc. 14 at 1) However, a review of the motion reveals no application of the standard for summary judgment ("no genuine issue of material fact"). Further, although disputing select allegations in the complaint (for example, whether La Cote has "an annual gross volume of $500,000 per year"), the motion fails to include supporting citations to the record.

and one-half times the regular rate." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298–99 (11th Cir. 2011), states:

> In order to be eligible for FLSA overtime . . . , an employee must first demonstrate that he is covered by the FLSA. There are two possible types of FLSA coverage. First, an employee may claim individual coverage if he regularly and directly participates in the actual movement of persons or things in . . . commerce. Second, an employee is subject to enterprise coverage if he is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . .

(citations and quotation marks omitted). The defendants argue that LeFevre establishes neither "individual coverage" nor "enterprise coverage." (Doc. 14 at 7, 9) Also, the defendants argue that, "[a]lternatively, Count I fails to state a cause of action." (Doc. 14 at 15)

### A. Individual Coverage

Individual coverage exists for an employee who "regularly us[es] the instrumentalities of interstate commerce in his work." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006). The complaint alleges that LeFevre "regularly and routinely" processed credit cards "from out of state banks" and that LeFevre "regularly and routinely used the telephone to accept reservations and book parties at the restaurant for customers that were located out of state."[2] (Doc. 12 ¶¶ 18, 24)

---

[2] Further, the response to the motion to dismiss alleges that LeFevre "accepted and cashed traveler's checks that were drawn upon out of state/county banks." (Doc. 19 at 5) However, LeFevre fails to include this allegation in the complaint.

- 2 -

*Thorne*, 448 F.3d at 1267, (1) questions (without deciding) that a credit card is an instrumentality of interstate commerce and (2) holds that, even if "credit card bills c[o]me from" out of state, "purchases made locally" are not "sufficient evidence of interstate activity." The complaint alleges that LeFevre processed credit card transactions for purchases in Florida. However, *Thorne*, 448 F.3d at 1266, categorizes an "interstate telephone" as an instrumentality of interstate commerce. Thus, by alleging that LeFevre "regularly and routinely used the telephone" to communicate with out-of-state customers (Doc. 12 ¶ 24), the complaint alleges facts sufficient to establish individual coverage.

**B. Enterprise Coverage**

"An employee must be employed in an enterprise engaged in commerce or in the production of goods for commerce in order to be entitled to FLSA overtime under an enterprise coverage theory." *Josendis*, 662 F.3d at 1320 (quotation marks omitted). Section 203(s)(1)(A) defines an "enterprise engaged in commerce or in the production of goods for commerce" as an enterprise that:

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

The complaint establishes that La Cote sold goods "that have been moved in or produced for commerce" by alleging that La Cote (1) "sold wines which were

imported from places outside of Florida" and (2) "imported food from outside the state of Florida and prepared it for resale within the state of Florida." (Doc. 12 ¶¶ 14, 16)  Further, the complaint alleges that "the annual gross revenue of La Cote was in excess of $500,000.00 during the relevant time periods." (Doc. 12 ¶ 26)  The complaint alleges facts sufficient to establish enterprise coverage.

### C. Factual Support

The defendants argue that, even if the allegations in the complaint establish coverage, the complaint (1) "failed to provide a starting date for which [LeFevre] is seeking unpaid wages" and (2) "failed to allege the amount of overtime, unpaid 'duties' performed while not on duty, or unpaid wages." (Doc. 14 at 16)  *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

Although the original complaint (Doc. 1) lacks these allegations, the amended complaint alleges that "LeFevre was employed by Defendants as a server for at least the last 3 years until his termination on or around April 28, 2015." (Doc. 12 ¶ 36)  Further, the complaint alleges:

> LeFevre, routinely and regularly, came in 2 or more hours prior to the opening of the business to the public for the purpose of food preparation, cleaning and restocking kitchen deliveries which had arrived that day.
>
> LeFevre, routinely and regularly, stayed 2 or more hours after his shift to clean the kitchen, mop floors and wash dishes.

(Doc. 12 ¶¶ 40, 41)  Finally, the complaint alleges that "Defendants paid LeFevre $8.00/hr as a server" and that "Defendants . . . never compensated him for overtime

when these hours caused Plaintiff to work more than 40 hours in a single week." (Doc. 12 ¶¶ 34, 42) The employer, not the employee, is "obligated to maintain and preserve records of the regular hourly rate of pay for any workweek in which overtime compensation is due under § 207(a)." *Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251, 1257 (11th Cir. 2001). The complaint alleges facts sufficient to state a claim for overtime under the FLSA.

**2. Count II**

The response to the motion to dismiss states, "Plaintiff agrees that [Count II] should be dismissed," and "asks this Court for leave to amend [the complaint] to state a cause of action for unpaid wages pursuant to Florida Law." (Doc. 19 at 10) Accordingly, this order dismisses Count II.

**3. Count III**

The complaint alleges that (1) "Defendants systematically added a '15% Gratuity' to all customers who dined at La Cote," (2) "Defendants instructed Plaintiff to inform customers that the 15% charge was a 'gratuity' as it stated on the menu," and (3) "Defendants knew that customers would believe that the '15% Gratuity' was the property of the server." (Doc. 12 ¶¶ 73, 75, 76) Count III claims that, by keeping the mandatory "15% Gratuity" charge that customers believed "was the property of the server," the defendants committed civil theft against LeFevre.

Defining civil theft, Section 812.014(1), Florida Statutes, states:

> A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
>
> (a) Deprive the other person of a right to the property or a benefit from the property.
>
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Section 812.012(3) defines "obtains or uses" as, among other things, "obtaining property by fraud, willful misrepresentation of a future act, or false promise."

Count III fails to establish that La Cote deprived LeFevre of the "15% Gratuity" "by fraud, willful misrepresentation of a future act, or false promise." LeFevre knew that La Cote would keep the "15% Gratuity" when "inform[ing] customers that the 15% charge was a 'gratuity' as it stated on the menu." (Doc. 12 ¶ 76)  The defendants correctly argue that "Count III fails to sufficiently allege the elements for civil theft" by the defendants against LeFevre.[3]  (Doc. 14 at 23)

---

[3] Citing cases from before 2013, the defendants argue that, because Count III "alleges a contractual relationship existed between the parties," the count "is barred by the economic loss doctrine." (Doc. 14 at 22) "[T]he economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condominium Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 401 (Fla. 2013). However, as LeFevre rejoins, *Tiara*, 110 So. 3d at 407, (finally and mercifully) "recede[s] from [the Florida Supreme Court's] prior rulings to the extent that they have applied the economic loss rule to cases other than products liability." Because this action involves no products liability, the economic loss doctrine is inapplicable.

## CONCLUSION

The defendants' motion (Doc. 14) to dismiss is **GRANTED IN PART**. Counts II and III are **DISMISSED**. No later than **NOVEMBER 12, 2015**, LeFevre may amend the complaint. The defendants' motion (Doc. 21) for leave to reply is **DENIED**.

ORDERED in Tampa, Florida, on November 3, 2015.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE